## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**MICHAEL P. JONES,**

      **Plaintiff,**

**v.**                          **Case No.: 3:22-cv-00366**

**WEST VIRGINIA DIVISION OF CORRECTIONS
AND REHABILITATION, WESTERN REGIONAL
JAIL, BETSY JIVIDEN, CARL ALDRIDGE,
C. FLEMING, J. MOORE, M. BRYANT,
E. ADKINS, and T. BURDETTE[1],**

      **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Plaintiff, Michael P. Jones, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, challenging Defendants' actions in regard to Jones's access to various publications, and claiming Defendants violated West Virginia Division of Corrections and Rehabilitation ("WVDCR") policy and the First Amendment to the United States Constitution. Pending before the Court is Defendants'[2] Motion for Summary Judgment. (ECF No. 91). This case is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order was referred to the undersigned United States Magistrate Judge for

---

[1] Defendant Tanya Burdette was incorrectly identified as "J. Burdett." (ECF No. 63 at 1). Therefore, the Clerk of Court is **ORDERED** to correct the style of the case to reflect the defendant's correct name.

[2] The motion for summary judgment was filed by all named Defendants except Betsy Jividen, who was not served with process. (ECF No. 29). The undersigned will refer to the instant motion as "Defendants' motion for summary judgment," and any reference to actions taken by Defendants in the course of this lawsuit refer to the actions of those Defendants who have been served.

submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the undersigned respectfully **RECOMMENDS** that Defendants' Motion for Summary Judgment (ECF No. 91) be **GRANTED**; that Plaintiff's Amended Complaint, (ECF No. 11), be **DISMISSED**; and that this case be **REMOVED** from the docket of the Court.

## I.    Relevant History

Jones is a West Virginia state prisoner, currently housed at Mount Olive Correctional Center. *See* WVDCR Offender Search. Jones filed this lawsuit on August 15 2022, at which time he was housed at the Western Regional Jail and Correctional Facility ("WRJ"). (ECF No. 3 at 10). Jones filed an amended complaint (hereinafter referred to as "the complaint") on September 2, 2022. (ECF No. 11 at 8). Jones named as Defendants the WVDCR, the WRJ, WVDCR Commissioner Betsy Jividen, and several staff members at the WRJ: Superintendent Carl Aldridge, Major C. Fleming, Unit Manager J. Moore, M. Bryant, E. Adkins, and T. Burdette (initially misidentified as "J. Burdett"). (ECF No. 11 at 1). Defendants filed answers to the amended complaint, (ECF Nos. 42, 63), the parties conducted discovery, (see ECF Nos. 64, 67, 76, 84), and the parties attempted a settlement meeting, which was unsuccessful. (ECF No. 85). Defendants filed the instant motion for summary judgment and accompanying memorandum of law on September 18, 2023. (ECF Nos. 91, 92). Jones filed a memorandum in opposition to the motion, (ECF No. 94), and Defendants submitted a reply memorandum. (ECF No. 95). Accordingly the matter is fully briefed and ready for resolution.

### A.  Relevant Mail/Publications Policies

Jones challenges the constitutionality of various policies and practices related to incoming publications at the WRJ. Policy and Procedure Statement No. 16002 ("PPS No.

16002") was the relevant policy in effect until June 15, 2022 and was the policy governing most of the incidents detailed in Jones's complaint. (ECF No. 91-2). Under PPS No. 16002, inmates could receive soft cover publications, magazines, and newspapers only from the publisher or book retailer. (*Id*. at 5). All hardcover publications were banned, and inmates could not receive softcover publications from any source other than the publisher or retailer. (*See id*.). Inmates could possess three publications at one time in their cell and have up to five books placed in their personal property. (*Id*.). Inmates could not transfer books to other inmates. (*Id*.). Once finished with a book, the inmate could choose to have it placed in his personal property, mail the book out at his own expense, donate the book to the jail's library, or have a family member or friend pick up the book. (*Id*.). The facility would hold a book for pick-up for 30 days; after 30 days, the book would be disposed of or donated to charity. (*Id*.).

Policy Directive 503.03 ("PD 503.03"), effective June 15, 2022, replaced PPS No. 16002 and changed some of the rules regarding incoming publications. (ECF Nos. 91-3, 92 at 2). Under Policy Directive 503.03, inmates can receive hardcover *and* softcover publications directly from the publisher or retailer—eschewing the previous outright ban on hardcover publications. (ECF No. 91-3 at 3). The Superintendent can also make an exception for an inmate to receive books not from a publisher or retailer, if the book is no longer available from the publisher. (*Id*.). While PPS No. 16002 had set WVDCR-wide limits on the number of publications an inmate could have in his cell or in his personal property, PD 503.03 instead provides that each Superintendent may set facility-specific limits on the number of publications an inmate may possess in his cell, for fire, sanitation, or house-keeping reasons. (*Id*. at 5).

### B. Jones's Claims

This lawsuit concerns several instances in which Jones alleges the WVDCR, the WRJ, and its staff wrongfully rejected books sent to him or on his behalf, or limited his access to books belonging to him, in violation of the First Amendment and WVDCR policy, detailed in Jones's complaint as follows:

#### 1. Blackstone Career Institute Materials

The first set of allegations relate to Jones's attempt to partake in a paralegal program offered by Blackstone Career Institute. In September 2021, the WRJ staff rejected and returned paralegal course materials which were sent to Jones by Blackstone Career Institute. (ECF Nos. 11 at 4). Jones filed a grievance, and Defendant Adkins responded, stating that all college educational materials must be approved prior to the inmate's receipt. (*Id.* at 4, 10). Jones claims that he appealed this grievance to the Commissioner but did not receive a response. (*Id.* at 4). Jones ordered the books a second time, and, after the paralegal course was approved, he was allowed to enroll in the program, and he received the books he ordered. (ECF No. 92 at 2). Jones seemingly challenges the constitutionality of the policy requiring pre-approval of college educational materials. At the time Jones ordered the BCI books, the relevant mail policy in effect was PPS No. 16002. However, PPS No. 16002 included no provisions stating that college educational materials must be pre-approved. (*See* ECF Nos. 91-2). Additionally, when Jones asked about this policy, Defendant Fleming responded that he was not aware of the existence of any education policy. (ECF No. 11 at 6). Jones challenges this informal policy requiring pre-approval of educational materials as a violation of his First Amendment rights. (*See* ECF No. 11 at 3–4, 6). He also argues the pre-approval requirement violates WVDCR policy. (*See id.* at 6).

In November 2021, Jones filed a grievance after he was denied the opportunity to take his Blackstone course material books from the GED Room. (*Id.*). Defendant Moore responded to the grievance, stating that Jones had been informed of the conditions of the program and that he could not take course materials out of the GED Room to his housing section. (ECF Nos. 11 at 4, 92 at 2). Moore also wrote that Jones had been offered more time in the classroom, but Jones had refused. (ECF Nos. 11 at 11, 92 at 2). Jones asserts he had not previously been informed of the conditions of the program, (ECF No. 11 at 4), and he also states that, contrary to what is stated in Moore's grievance response, he had taken advantage of the additional classroom time offered on numerous occasions. (ECF No. 94 at 7). Several months later, in April 2022, a legal writing book was confiscated from Jones's cell. (ECF No. 11 at 5). Liberally construed, Jones's complaint challenges the constitutionality of the decision prohibiting Jones from taking the Blackstone course books out of the GED Room to his cell.

### 2. Approved Vendor List

Also in November 2021, Jones requested a list of approved vendors to purchase books, because he had previously been sent a book from Barnes & Noble that was rejected. (ECF Nos. 11 at 4, 91-1 at 4). Defendant Bryant responded, stating that Barnes & Noble was not an authorized vendor. (ECF No. 11 at 4). The relevant publication policy in effect at the time was PPS No. 16002. PPS No. 16002 provided that inmates could only receive softcover publications "from the publisher or book retailer." (ECF No. 91-2 at 5). The policy did not anywhere provide that this was limited to *authorized* publishers or book retailers. (*See Id.*). Jones attached to his complaint two copies of a handout given to inmates: one copy stated, "Books can only be sent from the publisher or a company such as Books A Million (Barnes and Noble Prohibited)", (ECF No. 11 at 14), while the other

copy stated, "Books can only be sent from the publisher or a company such as Amazon," (ECF No. 11 at 12). The handouts are undated, and Jones did not state in his complaint when he received either handout. (*See generally* ECF No. 11). Liberally construed, Jones's complaint challenges this restriction—the exclusion of Barnes & Noble from the approved vendor list—as a violation of his First Amendment rights. (*See* ECF No. 11 at 6).

### 3.  Books Sent to Another Inmate on Jones's Behalf

On June 3, 2022, Jones's sister tried to send legal books to another inmate, Austin Dunlap, to receive for Jones. (ECF No. 11 at 5). Jones alleges that another inmate also named Michael P. Jones was housed at WRJ at the same time, which was causing issues with Jones's mail. (*Id.*). The books sent to Austin Dunlap were rejected. (*Id.*). Jones filed a grievance, and Defendant T. Burdette responded, stating that the books were rejected because they were hardcover books. (ECF No. 11 at 5). Jones disputes this; he claims the books were not hardcover. (ECF Nos. 11 at 5, 91-1 at 6). Dunlap, the inmate to whom the books were addressed, did not file a grievance. (ECF No. 91-1 at 6). The relevant mail/publication policy in effect at the time was PPS No. 16002. PPS No. 16002 limited the number of books an inmate could have in their cell and in their personal property. (ECF No. 91-2 at 5). Jones admitted in his deposition that he already had five books in his name, so he had the books sent to Dunlap, at which point they were rejected. (ECF No. 91-1 at 6). Importantly, PPS No. 16002 also prohibited inmates from transferring their books to other inmates, meaning Dunlap could not have transferred the books to Jones. (ECF No. 91-2 at 5). Jones challenges the rejection of the books sent to Dunlap as a violation of Jones's First Amendment rights. (*See* ECF Nos. 11 at 3, 5, 6).

### 4.  Legal Materials Sent by Jones's Attorney

In July 2022, Jones's attorney sent Jones legal papers and books related to his

appeal. (ECF No. 11 at 5). Jones received the legal papers, but he did not receive the legal books. (*Id.*). Jones later learned that the legal books had been discarded. (*Id.*). Jones filed a grievance, and Defendant J. Moore responded that she had called Jones's family to pick up the books, and Jones's family had told the staff to discard them. (*Id.*). But Jones alleges that his family was never contacted about the books, and that his mother filed a complaint with the Central Office. (*Id.*). Jones appealed the grievance to the Superintendent, and Defendant Aldridge responded that Jones's *attorney*—not his family—had advised the WRJ staff to dispose of the books. (*Id.* at 5, 18). Jones's family emailed Jones's attorney, and Jones's attorney stated that he had never been contacted about the books. (*Id.* at 5). Jones challenges the actions of the WRJ as violative of his First Amendment right to access the courts. (ECF No. 11 at 5–6). When Jones was deposed, counsel for Defendants asked Jones about the books sent by his attorney. (ECF No. 91-1 at 6). Jones stated that his attorney had filed his appeal, that the appeal was still pending, and that the rejection and disposal of the books sent by his attorney did not interfere with his attorney's ability to timely file the appeal. (*Id.*). Jones also seemingly challenges the constitutionality of the publisher-only restriction in PD 503.03. (*See* ECF No. 92 at 10).[3]

In sum, Jones challenges: 1) the WRJ's requirement that college educational materials be pre-approved before receipt; 2) the WRJ's decision that Jones could not remove certain books from the GED room; 3) the WRJ's exclusion of Barnes & Noble from its list of approved vendors; 4) the rejection of books sent to Austin Dunlap on Jones's behalf; 5) the rejection of books sent by Jones's attorney, for interfering with his right of

---

[3] When Jones was deposed, he stated he did not know why the legal books sent by his attorney were rejected. (ECF No. 91-1 at 6). In their motion for summary judgment, Defendants state the legal books were rejected because they were not sent directly from a publisher or book retailer. (ECF No. 92 at 10). Defendants then interpreted Jones's complaint as a challenge to the constitutionality of the publisher-only policy. (*Id.*).

7

access to the courts, and 6) the publisher-only restriction in PD 503.03.

In his complaint, Jones requests declaratory relief declaring Defendants' actions to be violations of his First Amendment rights and injunctive relief to change the book policy such that there are no 'blanket-bans' on any types of books. (ECF No. 11 at 7). He also requests compensatory damages and punitive damages. (*Id.*). He sues each individual defendant in their individual and official capacities. (*Id.* at 1).

### C. Defendants' Motion for Summary Judgment

On September 15, 2023, Defendants filed a motion for summary judgment and accompanying memorandum of law. (ECF Nos. 91, 92). Defendants attached to the motion portions of Jones's deposition, (ECF No. 91-1); a copy of PPS No. 16002, (ECF No. 91-2); and a copy of PD 503.03, (ECF No. 91-3). Defendants argue that neither the WVDCR nor the WRJ are proper defendants, because the WVDCR is not a "person" for purposes of 42 U.S.C. § 1983, and the WRJ is merely a building and not a legal entity capable of being sued. (ECF No. 92 at 4–6). With respect to Jones's claims for damages, they assert that punitive damages are barred by W. Va. Code § 55-17-4(3) and that the official-capacity claims for damages are barred by the Eleventh Amendment. (*Id.* at 5–6). Defendants also contend that Jones lacks standing to challenge the rejection of the books sent to another inmate on his behalf. (*Id.* at 9). They argue that most of Jones's claims for injunctive and declaratory relief are moot, because Jones was transferred from the WRJ and because PPS No. 16002 was replaced by PD 503.03. (*Id.* at 7–8). The one claim for injunctive relief not mooted would be Jones's challenge to the constitutionality of the publisher-only restriction in PD 503.03. Defendants argue the publisher-only restriction is constitutional because the Supreme Court of the United States upheld an identical policy in *Bell v. Wolfish*, 41 U.S. 520 (1979). (*Id.* at 10–11). Finally, Defendants claim they

8

are entitled to qualified immunity, as Jones has failed to show any violation of a clearly established right. (*Id.* at 12–13).

Jones filed a response to the motion for summary judgment. (ECF No. 94). Jones's response raises several new claims and allegations not contained in his complaint, including a claim for retaliation and claims for violations of his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. (*Id.* at 4–10). Jones attached many documents to his response, most of which are repetitive or have little meaningful relationship to the instant motion for summary judgment. (*See* ECF Nos. 94-1–94-18).[4] Jones briefly responded to Defendants' mootness argument, citing to the voluntary cessation doctrine. (ECF No. 94 at 11).

Defendants filed a reply, arguing that Jones's response failed to address the motion for summary judgment and instead improperly raised new claims not included in his complaint. (ECF No. 95). Defendants also reassert that they are entitled to qualified immunity, as Jones has not shown that Defendants violated any clearly established right. (*Id.* at 3–4).

---

[4] So that the proposed findings herein are complete, the undersigned notes that Jones attached the following documents to his Response: Policy and Procedure Statement 16002, (ECF No. 94-2); Policy Directive 503.03, effective date June 15, 2022, (ECF No. 94-3); Policy Directive 503.03, effective date November 1, 2009, (ECF No. 94-4); one of the grievances he previously attached to his complaint, (ECF Nos. 94-5); a grievance which was previously referenced in, but not attached to, the complaint, (ECF No. 94-6); emails between Defendants J. Moore and M. Bryant related to keeping the BCI coursebooks in the classroom, (ECF No. 94-7); a book checkout sheet showing books checked out of the GED room by inmates, (ECF No. 94-8); another grievance Jones had previously attached to his complaint, with an additional page not previously submitted that describes the grievance in more detail, (ECF No. 94-9); copies of the daily adult education sign-in sheet for inmates, from various dates between July 2, 2021 through September 12, 2022, (ECF No. 94-10); another grievance that Jones previously attached to his complaint, (ECF No. 94-11); a signed, notarized letter by Barbara Jones related to the legal books which were allegedly discarded, (ECF No. 94-12); emails between Jones's attorney and father regarding the discarded books, (ECF No. 94-13); various grievances which were not attached to or referenced in Jones's complaint, (ECF No. 94-14); copies of two envelopes which were returned to the sender, (ECF Nos. 94-15, 94-16); the undersigned's October 27, 2022 Order, denying Jones's request to have his mail forwarded to him, (ECF No. 94-17); and a list of answers to frequently asked questions regarding the Blackstone Paralegal program (ECF No. 94-18).

## II.    <u>Standard of Review</u>

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when no genuine issue of material fact is in dispute, and the moving party is entitled to judgment as a matter of law. *Lyons v. City of Alexandria*, 35 F.4th 285 (4th Cir. 2022) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law," and a disputed issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 501 U.S. at 248. Assertions of material facts must be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine,* 501 U.S. 496, 520 (1991). Consequently, motions for summary judgment impose a heavy burden on the moving party; it must be obvious that no material facts are in dispute and no rational trier of fact could find for the nonmoving party. *See Gary v. Facebook, Inc.*, 822 F. App'x 175, 179 (4th Cir. 2020) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

Nonetheless, the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. *Anderson, Inc.,* 477 U.S. at 252. While any permissible inferences to be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v.*

*Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Anderson*, 477 U.S. at 249-50).

## III.    Discussion

### A.  Dismissal of Betsy Jividen

One of the defendants named in Jones's complaint, Betsy Jividen, has not been served. (ECF No. 29). Jividen was the Commissioner of the WVDCR up until August 5, 2022, shortly before Jones filed this lawsuit. Because Jividen was no longer the Commissioner at the time this lawsuit was filed and Jones did not provide a personal service address for her, she was not served with process. (ECF No. 29). The new Commissioner was not joined in the lawsuit and, therefore, was not served with the complaint. Pursuant to Federal Rule of Civil Procedure 4(m), a defendant who is not served within 90 days after the complaint is filed must be dismissed without prejudice from the action, unless the plaintiff shows good cause for failure to serve, or the court grants additional time for service. Fed. R. Civ .P. 4(m). Jones filed his complaint in August 2022, and the 90-day period for service has long-since elapsed. Jones has not demonstrated good cause for failure to serve, and the Court has not granted additional time for service. Accordingly, the undersigned **FINDS** Jividen should be dismissed from this lawsuit.

### B.  New Claims Raised In Reply

In his reply to Defendants' Motion for Summary Judgment, Jones raised several allegations and claims which were not raised in his complaint. He alleges that he was never given notice of the rejection of the BCI books, in violation of WVDCR policy and the First Amendment. (ECF No. 94 at 4–5). Jones attached to his complaint a grievance which briefly mentioned that he never received notice that the BCI books were rejected, but he

did not include this allegation in the body of his complaint. (*See* ECF No. 11 at 4-6, 11). Jones may have intended to include the claim in his complaint by attaching the grievance, but this was not sufficient to apprise Defendants of his intent to raise a claim for lack of notice—particularly considering that the complaint's factual allegations appeared to be a thorough and complete recitation of Jones's claims. (*See* ECF No. 11 at 4–6); *see Edwards v. City of Goldsboro*, 178 F.3d 231, 245 (4th Cir. 1999) (holding that a complaint must provide a defendant with fair notice of the claims against it).

Jones raised several other claims and allegations completely absent from his complaint. He added an Equal Protection claim, alleging that other inmates were permitted to check books out of the classroom, and that Jones himself had previously been permitted to check out other classroom books, but that he was erroneously denied the privilege to take the paralegal books out of the classroom. (ECF No. 94 at 6). Although Jones raised this incident in his complaint, he only mentioned that he was denied the opportunity to take the books from the classroom; he did not allege that inmates are generally permitted to check books out of the classroom, nor did he make any arguments or state any facts indicating he intended to raise an Equal Protection claim. (*See* ECF No. 11 at 4). Jones also made additional factual allegations regarding the July 2022 appeal materials incident, stating that he was only given some of the legal papers sent by his attorney. Jones states that, in July 2022, his attorney delivered three legal books, trial transcripts, and a draft of Jones's appeal to WRJ. (ECF No. 94 at 7). Jones alleges that, though he received the transcripts, the books were discarded, and he did not receive the draft of his appeal. (ECF No. 94 at 7). While the books and transcripts were included in Jones's complaint, the complaint did not include any allegations regarding a draft appeal. (*See* ECF No. 11 at 5). Finally, Jones also added a claim for retaliation, (ECF No. 94 at 8),

which was not included in his complaint. (*See* ECF No. 11 at 4–6).

The Fourth Circuit has made clear that a plaintiff may not raise new allegations or claims in response to a motion for summary judgment. *Harris v. Reston Hosp. Ctr., LLC*, 523 F. App'x 938, 946 (4th Cir. 2013). It would unfairly prejudice Defendants to allow constructive amendment of Jones's complaint at this stage, many months after the deadline to amend his complaint has passed and after the close of discovery. *See id.*, (ECF Nos. 48, 72). Therefore, in evaluating Defendants' motion for summary judgment, the undersigned will not consider the new claims and allegations Jones included in his response.

### C.  WRJ and WVDCR not "persons" under § 1983

Two of the named Defendants, the WVDCR and WRJ, must be dismissed, because they are not proper defendants. Jones filed this lawsuit pursuant to 42 U.S.C. § 1983, which provides a cause of action for the violation of a plaintiff's constitutional rights by any "person" acting under color of state law. As Defendants argue in their motion for summary judgment, neither the WVDCR or the WRJ are "persons" that can be sued under § 1983. (ECF No. 92 at 4–6). Section 1983 provides a cause of action against any "person", but it does not provide a cause of action to sue a state or a public entity acting as an arm of the state. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 60 (1989). It is well-established that the WVDCR is an arm of the state and therefore not a person that can be sued under § 1983. *See Snyder v. Lakin Corr. Ctr.*, No. 3:18-CV-01021, 2019 WL 3543793, at *6 (S.D.W. Va., July 5, 2019), *report and recommendation adopted*, No. CV 3:18-1021, 2019 WL 3543686 (S.D.W. Va., Aug. 2, 2019). Likewise, the WRJ is a building owned by the state and operated by the WVDCR, but it is not a legal entity subject to suit. *Lewis v. W. Reg'l Jail*, No. 3:11-CV-01016, 2012 WL 3670393, at *5 (S.D.W. Va. July 24, 2012)

13

(citing *Roach v. Burch*, 825 F. Supp 116, 118 (N.D.W. Va. 1993), *report and recommendation adopted,* No. CIV.A. 3:11-1016, 2012 WL 3726874 (S.D.W. Va. Aug. 27, 2012). Accordingly, the undersigned **FINDS** that, as neither the WVDCR nor the WRJ is a "person" under § 1983, Jones cannot maintain an action against them, and both defendants should be dismissed from this suit.

### D. Eleventh Amendment Immunity

Jones raised claims for compensatory and punitive damages against the individually named Defendants in their official and individual capacities. As Defendants argue in their motion for summary judgment, (ECF No. 92 at 6), the official-capacity claims for damages are barred by the Eleventh Amendment.[5] *See Browning v. Seifert*, No. 1:13CV23, 2014 WL 1048494, at *19 (N.D.W. Va., Mar. 18, 2014) ("Although it is clear that neither a state agency nor a state official in his official capacity can be sued for monetary damages, Defendants can be sued in their official capacities for injunctive relief or in their individual capacities for monetary damages."). The Eleventh Amendment provides a general sovereign immunity for the states; states may not be sued in federal court unless they have consented to be sued. *See Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). This immunity extends to state employees when those employees are sued for monetary damages in their official capacities, because if the lawsuit were successful, the state would be liable for any damages awarded. *See Kentucky*

---

[5] Defendants also argue that Jones's claims for punitive damages are barred by W. Va. Code § 55-17-4(3). (ECF No. 92 at 5). This argument is superfluous. § 55-17-4(3) is a state law, which by itself could not be a defense to Jones's federal law claims. *See Martinez v. State of Cal.,* 444 U.S. 277, 284 n.8 (1980) (holding that state law defenses cannot defeat § 1983 claims, or else those state laws would violate the Supremacy Clause). Defendants are immune in their official capacities from claims for damages—including punitive damages—through the Eleventh Amendment. At best, § 55-17-4(3) provides evidence of the state's non-consent to suit for punitive damages. However, because the Eleventh Amendment's sovereign immunity doctrine assumes that states do not consent to suit, *see Edelman v. Jordan*, 415 U.S. 651, 673 (1974), it is unnecessary to refer to § 55-17-4(3).

*v. Graham*, 473 U.S. 159, 166 (1985). Absent consent by the state—which has not been given in this case—Jones may not sue a state employee for money damages in their official capacity. Any suit for money damages must be against the employee in their personal capacity. *See Wilson v. United States*, 332 F.R.D. 505, 517 (S.D.W. Va. 2019) (citing *Hafer v. Melo*, 502 U.S. 21, 22-23 (1991)). Accordingly, the undersigned **FINDS** that Jones's claims for damages against Defendants in their official capacities must be dismissed as they are barred by the principle of sovereign immunity.

### E. Moot Claims

The power of federal courts is limited by Article III of the Constitution. "To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided." *Ross v. Reed*, 719 F.2d 689, 694 (4th Cir. 1983). If circumstances change over the course of the lawsuit such that the controversy no longer exists, the federal courts are powerless to decide the case. *Id.* at 694. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969).  A prisoner's claim for injunctive or declaratory relief is typically mooted by their transfer to another facility where they are no longer subjected to the challenged condition, policy, or practice. *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007). In the instant case, Jones was transferred from the WRJ to the Huttonsville Correctional Center and then to the Northern Correctional Center and finally to Mount Olive Correctional Center, the state's only maximum security facility. (ECF No. 91-1). Several of Jones's claims relate to policies and practices that appear to be unique to the WRJ—the requirement that college educational materials be pre-approved, the rule prohibiting inmates from removing certain books from the GED room, and the

15

exclusion of Barnes & Noble from the authorized vendor list. To the extent these policies are documented, they seem to be informal creations of WRJ staff, included on jail handouts and discussed in staff emails. (*See* ECF Nos. 11 at 12–15, 94-7). There is no indication that these are statewide policies that Jones would still be subjected to at another facility, as they are not included in PD 503.03 (nor were they included in the former mail/publications policy, PPS 16002). (*See* ECF No. 91-2, 91-3).

Jones argues that his claims are not moot because of the voluntary cessation doctrine. (*See* ECF No. 94 at 11). However, the voluntary cessation doctrine is inapplicable. The voluntary cessation doctrine applies where a defendant attempts to moot a case by stopping its challenged conduct after it has been sued, before the court can render a decision on the merits. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Here, Jones is no longer subjected to the challenged practices at WRJ because he was transferred to another facility. Jones has not offered any evidence that his transfer was intended to evade the Court's jurisdiction. *See Jordan v. Sosa*, 654 F.3d 1012, 1037 (10th Cir. 2011) (finding that voluntary cessation doctrine did not apply to an inmate whose claims were mooted by his transfer to another facility, where plaintiff did not show the transfer was an effort by defendants to escape the court's jurisdiction). Even if the voluntary cessation doctrine applied to Jones's transfer, Jones has not shown that there is any reasonable expectation that he will be subjected to the same challenged policies at another facility, and his claims would still be moot. *See Pinson v. U.S. Dep't of Just.*, 514 F. Supp. 3d 232, 245 (D.D.C. 2021), *appeal dismissed sub nom. Pinson v. United States Dep't of Just.*, No. 21-5052, 2021 WL 11660648 (D.C. Cir., Dec. 23, 2021) (applying voluntary cessation doctrine where inmate was transferred to another facility but finding that inmate's claims were still moot, as there was no reasonable

expectation that the alleged constitutional violations would recur).

There is one additional exception to the mootness doctrine worthy of discussion—for those cases which are capable of repetition yet evading review. This exception applies to claims that are moot, but the challenged action was in its duration too short to be fully litigated prior to is expiration, and there is a reasonable expectation that the same complaining party would be subjected to the same action again. *Jordan v. Sosa*, 654 F.3d 1012, 1035 (10th Cir. 2011) (citing *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)) (per curiam)). As discussed above, Jones has not shown that there is a reasonable expectation he will again be subjected to the challenged policies related to the pre-approval requirement for college educational materials, the decision that he could not take certain books from the GED room, and the exclusion of Barnes & Noble from the authorized list of vendors. The undersigned **FINDS** that Jones's claims regarding these WRJ policies and decisions are moot, and the exception for claims capable-of-repetition-yet-evading-review does not apply. Accordingly, Defendants are entitled to summary judgment on Jones's claims for injunctive relief related to the pre-approval requirement for college educational materials, the decision that Jones could not remove certain books from the GED room, and the exclusion of Barnes & Noble from the authorized list of vendors.

### F. Access to Courts

Jones alleges that Defendants violated his First Amendment rights by limiting his access to the courts when they rejected and disposed of legal books sent by his lawyer. (ECF No. 11 at 5–6). Defendants only briefly addressed Jones's access to courts claim in their motion for summary judgment, but they stated that the denial of the legal books did not affect Jones's ability to file an appeal. (ECF No. 92 at 3). To show a violation of the right of access to the courts, an inmate must allege an actual injury and demonstrate that

his efforts to pursue a legal claim were somehow hindered. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Examples of injuries include an inmate failing to file a complaint, or having their complaint dismissed, because the inmate had such inadequate access to legal resources while imprisoned. *Id.* In the instant case, Jones's attorney timely filed an appeal as planned, (ECF No. 91-1 at 6), and Jones did not allege, for example, that, but for the rejection of the books, he would have raised any additional claims in his appeal. (*See* ECF No. 11 at 5). The undersigned **FINDS** that Jones has not shown any actual injury related to his access to the courts, nor has he clearly stated any other constitutional claims with respect to the rejection and disposal of the legal books. Accordingly, Defendants are entitled to summary judgment with respect to Jones's claim that the rejection of his legal books interfered with his right of access to the courts.

### G. Books Sent To Another Inmate

Jones alleges that Defendants violated his First Amendment rights by rejecting books which were sent to another inmate, Austin Dunlap, on his behalf. (ECF No. 11 at 5). The books were rejected for being hardcover books, which were prohibited under PPS No. 16002, the policy in effect at the time. (ECF Nos. 11 at 5, 91-2 at 5). Jones challenges the rejection as arbitrary, as he alleges the books were not hardcover. (ECF No. 11 at 5). Defendants argue that Jones lacks standing to challenge the rejection, because the books were sent to Dunlap and not to Jones, and Jones suffered no injury. (ECF No. 92 at 9). Standing is a constitutional doctrine limiting the powers of the federal judiciary, derived from the language in Article III stating that the judicial power extends to "cases" and "controversies." *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). In order to raise a claim in federal court, a plaintiff must have standing to do so—the plaintiff must be able to show they suffered

(or will imminently suffer) an injury in fact, fairly traceable to the actions of the defendant and redressable by a favorable decision. *Id.* at 472.

Jones's sister sent the books to Austen Dunlap, apparently with the intent that Dunlap could then transfer the books to Jones. However, PPS No. 16002 explicitly prohibited the transfer of publications between inmates, (ECF No. 91-2 at 5), meaning Jones would not under any circumstances have been permitted to take possession of the books from Dunlap, even if they had been allowed to enter the facility. Moreover, Jones admitted in his deposition that he had the books sent to Dunlap because Jones had already accumulated the maximum number of books he was permitted to have as an inmate at the WRJ. Consequently, if he had told his sister to have the books sent directly to him, they would have been rejected as being in violation of facility policy. The undersigned **FINDS** that, as there was no way for Jones to obtain the books, he suffered no injury when the WRJ rejected them, and he lacks standing to challenge the constitutionality of the rejection. *See Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977) ("In order to state a civil rights claim upon which relief can be granted under 42 U.S.C. § 1983, one must allege that he, himself, sustained a deprivation of a right, privilege or immunity secured to him by the Constitution and laws of the United States."). Accordingly, Defendants' motion for summary judgment should be granted with respect to Jones's claim regarding the rejection of books sent to another inmate.

### H. Constitutionality of the Publisher-Only Restriction

As stated previously, PD 503.03 permits inmates to receive hardcover and softcover publications only if they are sent by the publisher or book retailer. (ECF No. 91-3 at 3). Jones seemingly challenges this publisher-only restriction as a violation of his First Amendment rights. (ECF Nos. 11 at 4-6, 92 at 10). Defendants argue they are entitled

to summary judgment, because the Supreme Court upheld such restrictions in *Bell v. Wolfish*, 441 U.S. 520 (1979). (ECF No. 92 at 10–11). Defendants' reliance on *Bell* is somewhat misplaced, because, contrary to their assertions, the restriction Jones challenges is not "the exact same type of restriction" as was upheld in *Bell*. (ECF No. 92 at 10). However, PD 503.03 passes constitutional scrutiny when examined under the factors laid out in *Turner v. Safley*, 482 U.S. 78 (1987), as discussed below.

In *Bell v. Wolfish*, the Supreme Court upheld a policy by the Bureau of Prisons under which prisoners could only receive hardcover books from publishers, book clubs, or bookstores. 441 U.S. 520 (1979). The Bureau policy in place at the time applied the publisher-only restriction to both hardcover and softcover books. However, the Bureau was planning to amend the policy, such that inmates could receive hardcover publications only from publishers and softcover publications from all sources. As such, the Court in *Bell* did not consider whether it was permissible to apply a publisher-only restriction to both softcover and hardcover books. The Court only evaluated the constitutionality of the planned amended policy and did not consider whether a publisher-only restriction would be permissible if applied to all incoming publications. In upholding the publisher-only restriction on hardcover books, the Court noted that hardcover books presented a heightened risk for contraband smuggling. *Bell*, 441 U.S. at 551. The Court also reasoned that, because inmates could receive softcover books from all sources, there were sufficient alternative means of communication available to the inmates such that the publisher-only restriction on hardcover books was constitutional. *Id.* at 551–552. The publisher-only restriction at issue here is materially distinguishable from *Bell*, as the WVDCR policy applied the publisher-only restriction to *all* books. Therefore, the constitutionality of the WVDCR's publisher-only restriction is not squarely addressed by the Supreme Court's

decision in *Bell*.

Prisoners have a limited First Amendment right to send and receive mail. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). When evaluating the constitutionality of prison and jail regulations regarding the receipt of mail, courts must balance the inmate's limited First Amendment right against the facility's interests in order and security. *See Turner v. Safley*, 482 U.S. 78, 90 (1987). The ultimate question is whether the regulation at issue is reasonably related to legitimate penological interests. *See id.* at 89. In determining whether a regulation is reasonable, courts consider several factors: 1) whether the regulation is rationally related to a legitimate, neutral government objective, 2) whether the prisoner has other ways to exercise his right to receive information, 3) what impact the accommodation of the asserted right will have on guards and other inmates, and the allocation of prison resources, and 4) whether there exists an obvious, easy alternative to the regulation to ensure that the regulation is not an exaggerated response to prison concerns. *Id.* at 90. The same *Turner* factors apply regardless of whether Jones challenges the constitutionality of the policy on its face or as-applied. *See Kyles v. Chartier*, No. 6:12-CV-03421-JMC, 2014 WL 994608, at *7 (D.S.C., Mar. 13, 2014) (applying *Turner* factors to an as-applied challenge to prison's limitation on the number of books an inmate can possess); *Reynolds v. Fed. Bureau of Prisons*, No. 5:20-CV-00753, 2022 WL 19548487, at *14 (S.D.W. Va., Dec. 20, 2022), *report and recommendation adopted sub nom. Reynolds v. Young*, No. 5:20-CV-00753, 2023 WL 2711724 (S.D.W. Va., Mar. 30, 2023), *aff'd*, No. 23-6346, 2023 WL 5561473 (4th Cir., Aug. 29, 2023) (noting that various federal courts of appeals, including the Fourth Circuit Court of Appeals, have used the *Turner* test in as-applied challenges).

Examining the first factor, Defendants put forth a legitimate, neutral government

objective in their motion for summary judgment, stating that the restriction is "based on obvious security concerns." (ECF No. 92 at 10–11). The publisher-only restriction in PD 503.03 is rationally related to the government's security interests, as publications sent directly from a publisher or book retailer are significantly less likely to contain contraband than those received from other sources. *See Turner,* 482 U.S. at 89-90 (Stating there is a rational relationship between the government's interest and the challenged policy where the logical connection is not "so remote as to render the policy arbitrary or irrational."). The restriction is also content-neutral—all publications are subject to the same restriction. *See id.* at 90. ("We have found it important to inquire whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion, without regard to the content of the expression."). The second factor considers whether the prisoner has other ways to exercise the right to receive information. The publisher-only restriction in PD 503.03 does not significantly burden a prisoner's right to receive information; so long as the desired publication is available from the publisher or book retailer, the prisoner is free to purchase and receive it. The restriction incidentally bans publications that are no longer in print; however, the policy also provides that the Superintendent may make an exception if the publication sought by an inmate is no longer available from a publisher or book retailer. (ECF No. 91-3 at 3). This sufficiently conserves the prisoner's right to receive information via published materials.

The third factor considers the impact of the asserted right on prison staff, other inmates, and the allocation of prison resources. Permitting publications from all sources would seriously inconvenience prison staff, by requiring a careful and thorough inspection of every page of every publication entering the prison. This could, in turn, impact the delivery of mail to all inmates. *See Whitehead v. Mgmt. & Training Corp.*, 524

F. Supp. 3d 1155, 1181 (D.N.M. 2021), *appeal dismissed*, No. 21-2029, 2022 WL 4493575 (10th Cir., June 17, 2022). Finally, considering the fourth factor, Jones has not offered up any obvious, easy alternative to the publisher-only restriction—nor are any alternatives apparent to the undersigned. (*See* ECF Nos. 11, 94). All four *Turner* factors suggest that the publisher-only restriction in PD 503.03 is constitutional. This is consistent with the rulings of other courts, which have upheld publisher-only restrictions applied to both hardcover and softcover publications in jails and prisons. *See Ward v. Washtenaw Cnty. Sheriff's Dep't*, 881 F.2d 325 (6th Cir. 1989); *Hurd v. Williams*, 755 F.2d 306 (3d Cir.1985); *Kines v. Day*, 754 F.2d 28 (1st Cir. 1985); *Christopher v. Schwochert*, No. 18-CV-1073-BBC, 2021 WL 4263377, at *1 (W.D. Wis., Sept. 20, 2021); *Massi v. Hollenbach*, No. 4:06CV34, 2008 WL 3074478 (M.D. Pa., Aug. 1, 2008). Therefore, the undersigned **FINDS** that there is no genuine dispute of material fact regarding the publisher-only restriction, and Defendants are entitled to judgment as a matter of law, as the publisher-only restriction does not violate the First Amendment.

### I. *Qualified Immunity*

Finally, Defendants argue they are entitled to qualified immunity. (ECF No. 92 at 11). Strangely, Defendants' argument is based on West Virginia's qualified immunity doctrine. (*See id.*). West Virginia's state qualified immunity standard does not apply to this suit, which strictly raises federal claims under § 1983. *S.M.B. v. W. Virginia Reg'l Jail*, No. CV 3:17-1300, 2017 WL 3841894, at *2 (S.D.W. Va., Sept. 1, 2017) ("West Virginia's state qualified immunity standard, although modeled on the federal standard, does not apply to Plaintiff's federal claims"); *see Howlett v. Rose*, 496 U.S. 356, 375 (1990) (holding that in Section 1983 cases "[t]he elements of, and the defenses to, a federal cause of action are defined by federal law"); *see also Pinnock v. City of New Haven,* 553 F. Supp.

2d 130, 144 (D. Conn. 2008) (discussing Connecticut's qualified immunity standard, which is similar to West Virginia's: "State qualified immunity that protects municipal employees from common-law tort liability for the performance of discretionary governmental acts is different than federal-law qualified immunity, discussed above, that protects officials from suits under § 1983, and which hinges on the objective reasonableness standard.").

Fortunately for Defendants, a court may decide to grant a motion for summary judgment on grounds not raised by any party, after giving notice and a reasonable time to respond. Fed. R. Civ. P. 56(f)(2). While West Virginia's qualified immunity doctrine is inapplicable to Jones's claims, federal qualified immunity does apply to preclude Jones's individual-capacity claims for damages. Qualified immunity protects government officials from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To overcome the barrier of qualified immunity, a plaintiff must show both that 1) the challenged conduct violated a statutory or constitutional right and 2) that the right was clearly established at the time. *Mellen v. Bunting*, 327 F.3d 355, 365 (4th Cir. 2003). As discussed above, the undersigned **FINDS** that none of Jones's claims present constitutional violations, meaning they fail the first part of the qualified immunity inquiry, and the individual defendants all have qualified immunity against Jones's claims for damages in their individual capacities. Accordingly, Defendants are entitled to summary judgment with respect to all of Jones's claims for damages. This Proposed Findings and Recommendations, and its standard 14-day period for both parties to file objections, should constitute sufficient notice and opportunity for Jones to respond for purposes of Rule 56(f). *See Graves v. Cain,* No. CV 16-292-BAJ-RLB,

2021 WL 1538248, at *4 n.6 (M.D. La., Jan. 20, 2021)*, report and recommendation adopted,* No. CV 16-00292-BAJ-RLB, 2021 WL 1538241 (M.D. La., Apr. 19, 2021)*, appeal dismissed sub nom. Graves v. Vittorio,* No. 21-30240, 2021 WL 8314540 (5th Cir., Nov. 17, 2021) (stating that federal magistrate judge's proposed findings and recommendations satisfied the notice-and-response requirements of Rule 56(f))*; Watson v. McPhatter*, No. 1:17CV934, 2020 WL 3436102, at *9 n.11 (M.D.N.C., June 23, 2020), *report and recommendation adopted*, No. 1:17CV934, 2020 WL 4664697 (M.D.N.C., July 30, 2020) (stating the same).

## IV.    <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** that Defendants' Motion for Summary Judgment (ECF No. 91) be **GRANTED**; that Plaintiff's Amended Complaint, (ECF No. 11), be **DISMISSED**; and that this case be **REMOVED** from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff and counsel of record.

**FILED**: February 13, 2024

Cheryl A. Eifert
United States Magistrate Judge