IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MICHAEL P. JONES,

                Plaintiff,

v.                                              CIVIL ACTION NO.   3:22-00366

WEST VIRGINIA DEPARTMENT OF
CORRECTIONS AND REHABILITATION, et al.,

                Defendants.

**MEMORANDUM OPINION & ORDER**

This action was referred to United States Magistrate Judge Cheryl A. Eifert under 28 U.S.C. § 636(b)(1)(B). On February 13, 2024, Magistrate Judge Eifert issued her Proposed Findings and Recommendations ("PF&R"), ECF No. 96. She recommends this Court grant Defendants' Motion for Summary Judgment, *see* ECF No. 91, dismiss Plaintiffs' Amended Complaint, *see* ECF No. 11, and remove this case from its docket.  Plaintiff filed objections ("Pl.'s Obj."). *See* ECF No. 97.

Upon review, the Court **ADOPTS IN PART** the Magistrates Judge's PF&R. The Court **GRANTS** Defendants' Motion for Summary Judgment. However, the Court finds Defendants did not move for summary judgment on Plaintiff's "legal mail" claim. As a result, the claim remains live. Accordingly, the Court **REMANDS** this case for the Magistrate Judge to consider the issue.

**BACKGROUND**

Michael P. Jones is a West Virginia state prisoner. *See* PF&R at 2. Between September 2021 and July 2022, he resided at West Regional Jail & Correctional Facility ("WRJ"). *See id.* He currently resides at Mount Olive Correctional Center. *See id.*

In September 2021, Jones signed up for a paralegal program offered by Blackstone Career Institute. *See id.* at 4. The program mailed Jones materials. *See id.* WRJ staff returned the materials. *See id.* When Jones complained, WRJ informed him all college educational materials must be approved before an inmate can receive them. *See id.* Eventually, Jones started the program with the materials. *See* Defs.' Mot. Summ. J., Ex. A at 8:21–23 ("Jones Dep."), ECF No. 91-1.

In November 2021, WRJ prevented Jones from removing Blackstone Career Institute materials from WRJ's classroom. *See* PF&R at 5. When Jones complained, WRJ explained participants are "told the conditions of participating in the program" before starting the program—including the rule that coursework must remain in the classroom. Am. Compl., Ex B.

The same month, WRJ rejected a book Jones purchased from Barnes & Noble. *See* PF&R at 5. When Jones complained, WRJ explained Barnes & Noble is not an authorized vendor. *See id.*

In June 2022, Jones's sister mailed legal books to Austin Dunlap to give to Jones. *See* PF&R at 6. WRJ rejected the books. *See id.* When Dunlap complained, WRJ explained the books were rejected because they were hardcover. *See* Am. Compl., Ex. E.

In July 2022, Jones's attorney visited WRJ to deliver legal books and "2700 pages of legal papers" including a draft copy of an appeal and its record. Am. Compl. at 5. *See also* Jones Dep. at 25:9–26:2. WRJ "process[ed]" the materials without Jones present. *See* Am. Compl. at 5. After their review, WRJ gave Jones only the appellate record. *See* Jones Dep. at 26:3–4. WRJ did not give Jones the draft appeal or legal books. *See id.* at 26:4–5; 26:6–7 (explaining the facility threw the draft appeal and books away).

Jones sued. In his Amended Complaint, Jones alleges Defendants failed to follow "established policy and procedures" and violated the First Amendment. Am. Compl. at 6. Specifically, he argues (1) Defendants' pre-approval requirement for college coursework

materials, requirement college coursework stay in the classroom, authorized vendor restrictions, and transfer rules violate the First Amendment, and (2) Defendants' July 2022 actions regarding his attorney's visit interfered with his "access to courts" and "legal mail." *See id.*[1]

To support his claims, Jones cites two policies: WRJ Policy & Procedure Statement No. 16002 ("Local Policy") and West Virginia Division of Corrections & Rehabilitation Policy Directive No. 503.03 ("Statewide Policy"). *See* Defs.' Mot. Summ. J., Exs. B–C, ECF Nos. 91-2 (Local Policy), 91-3 (Statewide Policy). The Local Policy—in effect between September 2021 and June 15, 2022—allows inmates to receive only "softcover publications, magazines, and newspapers only from the publisher or book retailer." Local Policy at 5 ¶ 5. It does not reference a pre-approval requirement for college coursework materials, *see* PF&R at 4, does not require such materials be kept in a classroom, *see id.* at 5, and does not reference "authorized vendors," *id.*[2] However, the Local Policy explains: "Privileged incoming mail (letters from attorneys, courts) will be opened by staff and searched for contraband in the presence of the inmate." Local Policy at 3. The Statewide Policy—issued in June 2022—does not have this language. *See* Statewide Policy.

As relief, Jones seeks a declaratory judgment stating "[D]efendants violated the Plaintiff['s] rights under the First Amendment," injunctive relief ordering WRJ to stop "blanket banning types of books," compensatory damages, punitive damages, and all "other relief as it may appear plaintiff is entitled." Am. Compl. at 7.

After discovery, Defendants moved for summary judgment. *See generally* Defs.' Mot. Summ. J. The Magistrate Judge recommends granting the motion. *See* PF&R at 25–26. Relevant

---

[1] His Amended Complaint lists West Virginia Division of Corrections & Rehabilitation, West Regional Jail, Betsy Jividen, Carl Aldridge, C. Fleming, J. Moore, M. Bryant, E. Adkins, and T. Burdette as Defendants. *See id.* at 1, 3. Each is sued "individually and in their official capacity." *Id.*

[2] At some point, WRJ distributed two handouts to inmates. *See* PF&R at 5–6. One provides: "Books can only be sent from the publisher or a company such as Amazon." Am. Compl., Ex. C. The other provides: "Books can only be sent from the publisher or a company such as Books A Million (Barnes & Noble Prohibited)." Am. Compl., Ex. D.

here, the PF&R makes three recommendations. *First*, Betsy Jividen should be dismissed because Jones failed to timely serve Jividen or show good cause for his failure to serve her. *See id.* at 11. *Second*, Jones raised new arguments at the summary judgment stage. *See id.* at 11–13. These include a Fourteenth Amendment Due Process Clause claim and an Equal Protection Clause claim. *See id.* at 11–12. *Finally*, Jones's claims for injunctive and declaratory relief are moot. *See id.* at 15–17. The PF&R does not discuss Jones's "legal mail" claim. *See id.* at 17–18.

## STANDARD OF REVIEW

When a party proceeds *pro se*, the Court liberally construes his pleadings and objections. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

When a District Court reviews a Magistrate Judge's Proposed Findings & Recommendation, the District Court reviews *de novo* portions of the Magistrate Judge's PF&R "to which an objection is made." 28 U.S.C. § 636(b)(1)(C). The District Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if a "reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

In its analysis, the Court does not resolve disputed facts, weigh the evidence, or make determinations of credibility. *See Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Instead, the Court draws all permissible inferences from the facts in the light most favorable to the nonmoving party. *See United States v.*

*Diebold, Inc.*, 369 U.S. 654, 655 (1962). Still, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## ANALYSIS

Jones raises fourteen objections to the PF&R. *See* Pl.'s Obj. at 1–4. Collectively, his objections raise four issues. *See infra*. The Court considers each issue in turn.

### I

In Part III.A of the PF&R, the Magistrate Judge recommended Defendant Betsy Jividen be dismissed for lack of service under Fed. R. Civ. P. 4(m). *See* PF&R at 11. Jones objects. He argues the Magistrate Judge should substitute the current Commissioner of the West Virginia Department of Corrections for Jividen. *See* Pl.'s Obj. at 3. The Court disagrees.

Under Federal Rule of Civil Procedure 4(m), a defendant must be served with a summons and complaint within ninety days of filing his complaint. If the summons and complaint are not served within ninety days, the Court must dismiss the suit without prejudice for the unserved parties unless the plaintiff shows good cause for not making service. *See id. See also Attkisson v. Holder*, 925 F.3d 606, 627 (4th Cir. 2019) (requiring plaintiff to make some effort at service).

Jones sued Jividen on August 30, 2022. *See* Compl., ECF No. 1. By then, Jividen was no longer Commissioner of the West Virginia Department of Corrections. *See* PF&R at 11 (explaining she left service on August 5, 2022). As a result, when the United States Marshall Service attempted service, it failed. *See* ECF No. 29. The Magistrate Judge informed Jones of this issue, *see* ECF No. 47, and gave him time to join other parties, *see* ECF No. 48 ¶ 2. *Cf. Taylor v. Craig*, 2009 WL 900048, at *14 (S.D. W. Va. Mar. 24, 2009) (adopting similar approach "where the *pro se* plaintiff has named the wrong defendants"). Despite this notice, Jones did not provide a

new address to serve Jividen, otherwise pursue service of her, or join another Commissioner. *See* PF&R at 11. This inaction refutes a finding of good cause for failure to serve. *See id.*

Altogether, the Court finds Jividen's dismissal appropriate. *See Morgan v. Young*, 2023 WL 3549530, at *2 (S.D. W. Va. May 18, 2023) (explaining although a court may assist an incarcerated *pro se* plaintiff with service, it has "no responsibility to continue to search for the location of unserved defendants" or to "perfect[] service of process for the [p]laintiff").

## II

In Part III.B., the Magistrate Judge declined to hear two arguments because they were raised for the first time in summary judgment briefing. *See* PF&R at 11–13. Specifically, the Magistrate Judge declined to decide (1) whether Defendants provided adequate notice of their policies to Jones and (2) whether Defendants' treatment of Jones violated the Equal Protection Clause. *See id.* at 11–12. Jones challenges this recommendation. He argues neither claim is new. Instead, both clarify and expand old positions. *See* Pl.'s Obj. at 1–3. The Court disagrees.

A plaintiff may not raise new allegations or claims at the summary judgment stage. *See Sarno v. Wilson*, 2018 WL 3638079, at *3 n.2 (E.D. Va. Jul. 27, 2018) ("[I]t is well-accepted that a plaintiff, even one proceeding *pro se*, cannot amend his complaint by asserting new claims in an opposition brief to a motion for summary judgment.").

Jones does just that. His Amended Complaint stresses again and again Defendants' policies and actions violated the First Amendment—including his access to the courts and "legal mail." *See generally* Am. Compl. (mentioning the First Amendment six times). It does not mention—or allude to—insufficient notice to support a Fourteenth Amendment Due Process Clause claim *or* unequal treatment to support a Fourteenth Amendment Equal Protection Clause claim. *See id.*

Instead, Jones first mentions he never received notice that Defendants initially rejected his Blackstone Career Institute materials in his summary judgment response. *See* PF&R at 11–12. Similarly, his Equal Protection Clause claim is "completely absent from his complaint." *Id.* at 12. Neither theory of liability clarifies or expands on existing claims. *See* Pl.'s Obj. at 3. They are new claims—"particularly considering [] the complaint's factual allegations appear[] to be a thorough and complete recitation of Jones's claims." PF&R at 12.

In short, Jones cannot use summary judgment briefing to assert new Due Process and Equal Protection claims.[3] Accordingly, the Magistrate Judge correctly refused to entertain both claims.[4]

**III**

In Part III.E, the Magistrate Judge found Jones could not seek injunctive and declaratory relief against Defendants for three policies: the requirement college educational materials be approved, the prohibition on removing course materials from the GED room, and the exclusion of Barnes & Noble from the authorized vendor list. *See* PF&R at 15–16. Because Jones failed to show he would be subject to these "informal" WRJ "creations" after his transfer from WRJ, *id.*, his requests for injunctive and declaratory relief were moot, *see id.* at 17.

Jones disagrees. He argues the challenged policies are not "unique to WRJ;" instead, they are systemwide policies within the WVDCR. *See* Pl.'s Obj. at 4.

The Court is sympathetic to Jones. After Jones sued, WVDCR transferred him from WRJ to Huttonsville Correctional Center & Jail, then Northern Regional Correctional Facility & Jail, and finally Mt. Olive Correctional Complex & Jail. *See* Jones Dep. 6:4–13. During his deposition,

---

[3] Similarly, the Court refuses to consider whether WRJ "does not have authority to replace or supersede" statewide policy directives, Pl.'s Obj. at 1, or whether WRJ can "create policy" over WVDCR, *id.* at 4. Both claims are raised for the first time in objections to a PF&R. As such, the Court is not required to entertain them. *See Davis v. WVU Medicine/Camden Clark Med. Ctr.*, 2023 WL 5200669, at *3 (S.D. W. Va. Aug. 14, 2023).

[4] Because the Magistrate Judge properly disregarded Jones's Due Process Clause and Equal Protection Clause claims, the Court need not consider whether qualified immunity protects Defendants against such claims. *See* Pl.'s Obj. at 4.

Jones testified he "had the same issues" at Huttonsville and Northern. *See id.* at 24:4–14. Defendants do not reference—let alone challenge—this testimony. *See* Def.'s Mem. at 8–9, ECF No. 92. Taken at face value, this testimony might defeat a mootness challenge from WVDCR. The "chronological history" of his many transfers and Jones's testimony "does not instill confidence" the conditions at WRJ will not be repeated at other facilities in the WVDCR network. *Washington v. Fed. Bur. of Prisons*, 2019 WL 2125246, at *10 (D.S.C. Jan. 3, 2019). In fact, his "continuing transfers" might prevent meaningful judicial review altogether. *Id.* (citing cases).

The problem for Jones is WVDCR is no longer a defendant. *See* PF&R at 13–14. Neither is WRJ. *See id.* Nor is former Commissioner Jividen. *See supra* Part I. Only the six individual defendants remain. Yet Jones fails to show a "real or immediate threat" he will be "wronged again" by any of these defendants. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Indeed, he fails to show any of them still works within the WVDCR network—let alone at his current facility. As such, injunctive and declaratory relief against them is unavailable. *See Covington v. Lassiter*, 2017 WL 3840280, at *4 n.3 (W.D.N.C. Sept. 1, 2017) (rejecting injunctive relief against defendants when plaintiff was "no longer under the control and custody" of the defendants).

Of course, a claim for damages may proceed even when claims for injunctive relief and declaratory relief become moot. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (recognizing an inmate's transfer may moot injunctive relief but does not moot claims for monetary damages); *Salmons v. W. Reg'l Jail Auth.*, 2019 WL 5616916 (S.D. W. Va. Oct. 30, 2019) (Chambers, J.) (similar). Yet—this situation is not applicable here. Defendants requested qualified immunity for all of Jones's claims about the three WRJ policies. *See* Def.'s Mem. at 13; Def.'s Reply at 4. In her PF&R, the Magistrate Judge recommends qualified immunity be granted on these claims. *See* PF&R at 23–25. Jones did not object to this recommendation. *See* Pl.'s Obj. at

4 (arguing qualified immunity should be denied only for his "legal mail," "Due Process," and "Equal Protection" claims). *Id.* The Court finds no clear error in the Magistrate Judge's analysis. *See Starcher v. Colvin*, 2013 WL 5504494, at *2 (S.D. W. Va. Oct. 2, 2013) ("Any portion of the Magistrate Judge's PF&R that has not been properly objected to is reviewed only for clear error, if it all."). Accordingly, Jones's claims for injunctive and declaratory relief are moot.

IV

Jones makes one last pitch. He argues the Magistrate Judge failed to consider his "legal mail" claim. *See* Pl.'s Obj. at 2–3, 4 (Objection Nos. 4, 5, 12). The Court agrees.

In his Amended Complaint, Jones alleges his attorney hand-delivered books, a draft appeal, and 2700 pages of supporting transcripts to WRJ. *See* Am. Compl. at 5; Jones Dep. 25:13–20. He alleges these materials were intended to help him "get[] ready to file [an] appeal." *Id.* at 25:14. Nevertheless, WRJ "process[ed]" the appellate documents and books without Jones present. *Id.* at 25:24. *See also* Am. Compl. at 6 ("I was told by the "Gold Badge" in the office my books and papers were in the office for processing."). Eventually, WRJ gave Jones the transcripts, Jones Dep. at 26:3–4, but "threw [] away" the draft appeal and books, *id.* at 26:5.

Jones grounds two claims in these allegations. *First*, Jones suggests WRJ staff "interfered" with his appeal preparation. *See* Am. Compl. at 5 ("WRJ staff interfered, denying legal books from my attorney to assist in pursuing my legal matter."); 6 (referencing "access to courts"). *Second*, Jones alleges Defendants interfered with his "legal mail." *Id.* at 6.[5]

As the Magistrate Judge notes, Defendants "only briefly addressed" Jones's "access to courts" claim. PF&R at 17. *See also* Def.'s Mem. at 3 (stating—in its statement of facts—Jones

---

[5] The Court recognizes the Amended Complaint does not mention a draft appeal. *See* PF&R at 12 (discussing these new factual allegations). Ultimately, whether Jones received all or some of his legal mail is irrelevant. The crux of his legal claim is WRJ opened and reviewed his privileged, legal correspondence outside his presence.

received "transcripts" his attorney delivered and filed his appeal without issue). Defendants did not reference Jones's "legal mail" claim. *See generally id.*

Jones, however, did. In his Reply to Defendants' Motion for Summary, Jones discusses his "legal mail" claim. *See* Pl.'s Resp. at 6–7, ECF No. 94. He cites three cases: *Kensu v. Haigh*, 87 F.3d 172 (6th Cir. 1996), *Davis v. Good*, 320 F.3d 346 (2d Cir. 2003), and *Keenan v. Hall*, 83 F.3d 1083 (9th Cir. 1996). Each case acknowledges "legal mail" from an attorney to an inmate should generally be opened in the inmate's presence. *See Kensu*, 87 F.3d at 174; *Davis*, 320 F.3d at 351; *Keenan*, 83 F.3d at 1094. Despite his discussion and references, Defendants did not reply to this argument or amend their summary judgment motion. *See generally* Defs.' Reply, ECF No. 95.

Because Defendants did not address—or move for summary judgment on—Jones's "legal mail" claim, the Magistrate Judge did not rule on the issue. *See* PF&R at 17–18 (discussing only Jones's "access to courts" claim). Defendants' silence on the issue precludes summary judgment on the claim—at least for now. As a result, Jones's "legal mail" claim remains live.

Although Jones cannot seek injunctive or declaratory relief for his "legal mail" claim, *see supra* Part III, he may still recover damages if successful on the merits, *see* Am. Compl. at 7 (requesting various forms of damages). In his Amended Complaint, Jones seeks compensatory damages, punitive damages, and "other relief as it may appear [he] is entitled." *Id.* The Court reads the final request as one for nominal damages. *See, e.g.*, *Green v. Padula*, 2007 WL 895484, at *1 (D.S.C. Mar. 21, 2007) (inferring nominal damages based on a *pro se* plaintiff's request for "relief to be just and fair as it may appear on behalf of the [P]laintiff is entitled").

Accordingly, the Court remands this case for the Magistrate Judge to resolve in the first instance Jones's "legal mail" claim.[6]

---

[6] At first glance, the Court finds *Haze v. Harrison*, 961 F.3d 654 (4th Cir. 2020), instructive.

## CONCLUSION

The Court **ADOPTS IN PART** the Magistrates Judge's PF&R. The **GRANTS** Defendants' Motion for Summary Judgment. However, Defendants did not move for summary judgment on Plaintiff's "legal mail" claim. Accordingly, the Court **REMANDS** this case for the Magistrate Judge to consider in the first instance Jones's "legal mail" claim.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Honorable Cheryl A. Eifert, Magistrate Judge; counsel of record; and any unrepresented parties.

ENTER: April 16, 2024

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE