IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**MICHAEL P. JONES,**

      **Plaintiff,**

v.     Case No.: 3:22-cv-00366

**WEST VIRGINIA DEPARTMENT OF
CORRECTIONS AND REHABILITATION, et. al.,**

      **Defendants**.

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Plaintiff, Michael Jones, filed this *pro se* action under 42 U.S.C. § 1983, alleging Defendants violated his constitutional rights by rejecting incoming publications and interfering with his access to educational materials. (ECF No. 11). After the close of discovery, which lasted nearly nine months, Defendants moved for summary judgment. Jones did not file a dispositive motion, but did submit a reply to the summary judgment motion. The undersigned issued Proposed Findings and Recommendations for disposition ("PF&R"), recommending that Defendants' motion for summary judgment be granted. (ECF No. 96). The presiding District Judge ("the Court") adopted the PF&R, granting Defendants' motion on the issues raised by Defendants and addressed in the PF&R. (ECF No. 98). However, the Court found that Defendants had failed to move for summary judgment on Jones's claims regarding "legal mail" and remanded the case to the undersigned to consider that issue. (*Id.*).

1

Having thoroughly reviewed the record, and for the following reasons, the undersigned respectfully **RECOMMENDS** that Jones's amended complaint, (ECF No. 11), be **DISMISSED** in its entirety, and this action **REMOVED** from the docket of the Court.

**I.     Relevant Facts**

Jones filed this lawsuit challenging actions taken at the Western Regional Jail and Correctional Facility ("WRJ") related to the handling of Jones's incoming mail and his access to educational materials. In his amended complaint, Jones alleged that Defendants violated Division of Corrections policy and his First Amendment rights by "denying various books/mail." (ECF No. 11 at 3). Most of the allegations and claims in Jones's amended complaint were dismissed on Defendants' motion for summary judgment. (*See* ECF Nos. 11, 98). The undersigned has been tasked with considering Jones's legal mail claim. This PF&R is limited to that particular issue.

*A. Amended Complaint*

In his amended complaint, under the section entitled "Claim," Jones stated as follows:

> The action of the defendants in denying plaintiff various Books/Mail violates both West Virginia Department of Corrections Policy and Procedures and violated Plaintiff Jones first amendment of the United States Constitution.
>
> Defendants exhibit a pattern of behavior by violating First Amendment rights towards inmates by denying books without merit or cause.

(ECF No. 11 at 3) (errors in original). Thus, his claim very clearly centered on the ***denial*** of books and mail.

As for the legal mail claim, in the body of the amended complaint, Jones alleged that, in July 2022, his attorney delivered three law books and 2700 pages of "legal papers"

to the WRJ to be given to Jones. (ECF No. 11 at 5). Jones claims that he received the legal papers, but not the law books. (*Id.*). He then submitted a grievance over the missing law books and eventually learned that the books had been discarded. (*Id.*). The amended complaint's full description of the relevant events is reproduced here:

> On 7-27-22 Grievance 22-WRJ-A1-722 was filed. (Exhibit G). As on Sunday July 10, 2022 my attorney delivered books to WRJ along with 2700 pages of legal papers. I was told by the "Gold Badge" in the office my books & papers were in the office for processing. On 7-13-22 copies of my legal papers were delivered but not my books.
>
> On 7-28-22 J Moore responded she called my family to pick them up and they (my family) told staff to discard.
>
> My mother, Barbara Jones, called Central Office to file complaint as they were never contacted. She spoke with Major Flemming.
>
> Grievance was appealed 22-WRJ-AL-729A, Carl Aldridge responded my attorney advised facility to dispose of books. Email from my attorney states WRJ never contacted him. WRJ staff interfered, denying legal books from my attorney to assist in pursuing my legal matter.

(ECF No. 11 at 5) (errors in original).

Jones attached to his amended complaint several grievances, including one related to the WRJ's rejection of the law books—the same grievance referenced in the body of the amended complaint. (ECF No. 11 at 18). The grievance matched Jones's allegations in his amended complaint: on July 10, 2022, Jones's attorney delivered books and 2700 pages of "legal papers being filed with his appeal" to be given to Jones. (*Id.*). Jones did not indicate in either the amended complaint or the grievance whether the books and papers were wrapped or marked, and if so, how they were wrapped or marked. He did not allege that the books and papers were in packaging which identified them as legal mail or as confidential and privileged, and he did not complain that any of the Defendants opened and reviewed the legal papers outside of his presence. Jones did assert in both the

3

amended complaint and the grievance that he received the papers, but not the law books. (*Id.*). In the amended complaint, Jones alleged that Defendants "interfered" by denying him the legal books from his attorney to assist in pursing his appeal. Under the "Relief Sought" section of the corresponding grievance form, Jones wrote: "I would like my legal books delivered to me as provided by my attorney to assist with my legal work." (*Id.*).

Accordingly, in both the amended complaint and the grievance, Jones described his claim related to legal mail as a wrongful refusal by the WRJ to provide him with the law books. Neither Jones's amended complaint, nor the attached grievance, explained why the law books were discarded. (*See* ECF No. 11). However, Defendant J. Moore responded to the grievance, writing that Jones's family had been instructed to pick up the law books, and they told staff the books would not be picked up and to discard them. (*Id.*)

Jones did allege in the amended complaint that "policy 328.00 was violated by coping [sic] my legal papers. Policy was also violated by censoring my correspondences by not processing legal book to be delivered to me as provided by my attorney. This limits my access to the Courts." (*Id.* at 6). He added: "Defendants continue to violate inmates 1st Amendment rights and not follow established policy and procedures regarding books/publications/access to courts/legal mail." (*Id.*). However, Jones provided no additional factual allegations to support that contention. He did not specify what legal papers were allegedly copied, and he did not provide any information suggesting that one or more of the defendants opened mail designated as legal mail outside of his presence.

Jones attached to the amended complaint publications from the WRJ providing information about visitation, commissary, property releases, dress code and rules for visitors, and inmate mail. (ECF No. 11 at 12-15). Of relevance here, the publications stated:

All mail is photocopied, inmates will get a copy and the original is destroyed.

> …
>
> Books can <u>ONLY</u> be sent from the publisher or a company such as Books A Million[1] (Barnes and Noble Prohibited). All books <u>*MUST*</u> be paperback, No hardback/leather-bound books will be accepted. No journals, Catalogs, or How To Books. No more than 5 publications can be in an inmate's cell at one time. <u>*Any*</u> publication that is sent through the mail is logged onto the inmate's book list.

(ECF No. 11 at 12-15). He did not attach a copy of Policy 328.00.

### ***B. PF&R, Objections, and Remand Order***

On review of Defendants' motion for summary judgment, the undersigned identified two constitutional claims related to Jones's allegations that the Defendants denied him the law books: (1) a claim that the rejection of the law books interfered with his right of access to the courts, and (2) a claim that the publisher-only restriction, which resulted in the rejection of the law books, violated his First Amendment right to receive published materials. (ECF No. 96 at 7–8). The undersigned determined that both claims lacked merit. (*Id.* at 17–18, 19–23).

The undersigned also noted that Jones had raised new factual allegations in his reply to the summary judgment motion, including an allegation that Defendants had failed to give him a draft appeal delivered by his attorney along with the 2700 pages of legal papers, which Jones identified as the transcript from his criminal trial. (*Id.* at 12). Because Jones made no mention of a draft appeal in his amended complaint, the undersigned determined that it would be inappropriate to permit Jones to constructively amend his complaint and add this allegation months after the deadline to amend his complaint had passed and after the close of the discovery. (*Id.* at 12–13). Thus, the

---

[1] The two informational publications are not dated and contain minor differences, which are not particularly relevant here. For example, one replaces Books A Million with Amazon. (ECF No. 11 at 12-15).

undersigned declined to consider Jones's allegation regarding the draft appeal when assessing Defendants' motion for summary judgment. (*Id.* at 13).

In addition, Jones asserted new causes of action in his reply, including a claim for retaliation and violations of the Due Process and Equal Protection Clauses of the United States Constitution. (ECF No. 96 at 9, 11-13). The undersigned found that the new causes of action should be precluded because they were not raised prior to Defendants filing their motion for summary judgment. Allowing new allegations and claims at that stage of the litigation was prejudicial to Defendants. (*Id.* at 13). Ultimately, the undersigned recommended that Defendants' motion be granted and Jones's complaint be dismissed. (ECF No. 96 at 25).

Jones timely asserted a number of objections to the PF&R. (ECF No. 97). Only two objections pertained to legal mail. In both, Jones challenged the undersigned's interpretation of his allegations concerning the law books. First, Jones stated:

> "Legal Materials Sent by Jones's Attorney" – This is misleading, material was NOT "sent" to Jones, materials was brought to WRJ. While during deposition, Jones did state that his attorney was able to file timely appeal. However, NOW (after being able to self education a little, I have learned there are several things NOT done by my attorney). In addition, Jones was never provided notice regarding the rejection of materials. Here the argument is NOT the denial of books or constitutionality of publisher-only rule; rather, **it's the denial of LEGAL MAIL**. "We emphasize that it is the content and not the method of delivery which is the subject of the protected right". "Merely because the materials were not delivered by US mail does not render those packages incapable of being considered 'Legal Mail'" (Kensu v. Haigh, 87 F.3d, 172 (6th Cir. 1996)).

(ECF No. 97 at 2–3) (errors in original) (emphasis added). Second, Jones asserts that he never intended to challenge the constitutionality of the publisher-only restriction; rather, he meant to argue that the law books should not have been discarded because the books themselves were legal mail:

6

> 'Publisher-only restriction' Jones is NOT challenging the publisher-only restriction in any way. Only that WRJ Staff are using the 'publisher-only' rule **to deny BOOKS AS LEGAL MAIL.** This is a Legal Mail argument."

(ECF No. 97 at 4) (emphasis added).

Upon reviewing the PF&R, the Court granted Defendants' motion for summary judgment on all claims raised in the motion, including the "access to courts" claim and the challenge to the constitutionality of the publisher-only restriction. (ECF No. 98 at 1). However, the Court determined that Defendants had not expressly moved for summary judgment on Jones's legal mail claim and remanded the case to the undersigned to consider Jones's legal mail claim in the first instance. (*Id.*). As the Court understood Jones's amended complaint, Jones "alleges Defendants interfered with his 'legal mail.'" (*Id.* at 9).

The Court interpreted Jones's amended complaint as containing a claim that Defendants "opened and reviewed his privileged, legal correspondence outside his presence." (*Id.* at 9, n.5). The Court noted that Jones alleged his attorney hand-delivered books, a draft appeal, and 2700 pages of supporting transcripts, which were intended to help Jones prepare to file an appeal. (*Id.* at 9). "Nevertheless," the Court wrote, "WRJ 'process[ed]' the appellate documents and books without Jones present." (*Id.*). The Court added that in Jones's reply to Defendants' motion for summary judgment, Jones "discusses his 'legal mail' claim" by citing three legal cases: "Each case acknowledges 'legal mail' from an attorney to an inmate should generally be opened in the inmate's presence. *See Kensu*, 87 F.3d at 174; *Davis*, 320 F.3d at 351; *Keenan*, 83 F.3d at 1094." (*Id.* at 10). The Court concluded, "Despite his discussion and references, Defendants did not reply to this argument or amend their summary judgment motion." (*Id.*). Consequently, the Court directed the undersigned to examine that claim.

7

## II.     <u>Discussion</u>

On remand, the undersigned considers a potential claim that was not addressed in Defendants' motion for summary judgment: that Defendants opened and reviewed Jones's legal mail outside of his presence. (ECF No. 98 at 9). This claim, if alleged in Jones's amended complaint and factually supported, could amount to a violation of his constitutional rights. As a general rule, prison staff may not open and read an inmate's legal mail outside of the inmate's presence. *See Wolff v. McDonnell*, 418 U.S. 539, 577 (1974); *Crowe v. Leeke*, 550 F.2d 184, 188 (4th Cir. 1977); *but see Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983) (finding that prisoner failed to state a constitutional violation, where prison staff opened prisoner's legal mail outside his presence in a few isolated instances, either accidentally or without superior authorization).

A complaint states a claim for relief if it contains sufficient factual content to permit the court to draw the "reasonable inference" that the defendant is liable for alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept as true a complaint's factual allegations, but it need not presume the truthfulness of any legal conclusions. *Id*. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. The complaint's factual allegations must rise to the level of plausibility—there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Courts reviewing *pro se* cases must construe the complaint liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is not the plaintiff's advocate, and it may not construct the plaintiff's arguments for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or rewrite the pleading to include claims which were never presented. *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998). Furthermore, the court cannot attribute actions to certain defendants when the

8

plaintiff does not specify who allegedly violated his rights.

Jones brings this action under 42 U.S.C. § 1983. A claim under 42 U.S.C. § 1983 has two essential elements: there was a violation of the plaintiff's rights under the Constitution and laws of the United States, and the alleged violation was committed by a person acting under color of state law. *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011). The term "person" does not include state agencies, arms of state agencies, or state employees acting in their official capacities. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 60 (1989). In addition, the doctrine of *respondeat superior* does not apply to suits brought under 42 U.S.C. § 1983—superior officers cannot be held liable for the misconduct of their inferiors, absent a policy or custom permitting the misconduct. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Accordingly, to state a plausible claim, Jones must not only allege facts that show a violation of his rights, but must indicate which individual defendant committed the violation.

Jones submitted an Application to Proceed Without Prepayment of Fees and Costs in this case, and his request was granted. (ECF Nos. 2, 5). The statute governing proceedings *in forma pauperis* states as follows:

> **(e)(2)** Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> **(A)** the allegation of poverty is untrue; or
>
> **(B)** the action or appeal—
>
> > **(i)** is frivolous or malicious;
> > **(ii)** fails to state a claim on which relief may be granted; or
> > **(iii)** seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C.A. § 1915(e)(2)(B). As indicated by the clear language of the statute, the dismissal

9

can occur "at any time" the court becomes aware of the defect in the action. *Clark v. Smith*, No. 22-6958, 2023 WL 4198038, at *2 (4th Cir. Jun. 27, 2023). The undersigned applies this standard of review in considering whether Jones stated a plausible claim.

After careful review of the amended complaint, the undersigned **FINDS** that Jones did not raise a claim regarding the opening and reviewing of his legal mail. To the extent the amended complaint can be construed to contain such a claim, the undersigned **FINDS** that Jones failed to provide sufficient factual allegations in the amended complaint, or elsewhere in the record, to state a plausible claim that one or more of the individual defendants opened and reviewed his legal mail outside of his presence. Had such a claim been apparent in the amended complaint, Defendants would have been alerted to the claim and could have (1) conducted discovery on the issue and (2) addressed it in the summary judgment motion.

In his amended complaint, Jones stated that Defendants violated his First Amendment rights by "denying [him] various books/mail." (ECF No. 11 at 3). He went on to describe the July 2022 delivery of books and papers from his attorney: he received the transcripts, but he did not receive the law books, and he later learned the books were discarded. (ECF No. 11 at 5). In explaining the sequence of events that led to the law books being discarded, Jones made a passing reference to the fact that he was told his "books & papers were in the office for processing." (ECF No. 11 at 5). The Court interpreted this sentence to mean that Jones claimed his legal mail was opened outside of his presence. (*See* ECF No. 98 at 9–10). The Court also cited to a similar excerpt from Jones's deposition, where he again mentioned that he was told that the law books would have to go through "processing," but then he only received the legal papers. (*See* ECF Nos. 91-1 at 5–6, 98 at 9). Jones could not recall in his deposition the WRJ staff member who told him

that the books were being processed, nor is there any evidence in the record as to who delivered the legal papers to Jones.

Jones did not explain what he understood "processing" to entail, (*See* ECF No. 11 at 5), and there is no evidence in the record of what occurred with the legal papers and books after they were delivered to the office. "Process," as a verb, means, "to subject to or handle through an established usually routine set of procedures." Merriam-Webster Dictionary at https://www.merriam-webster.com/dictionary/processing (last visited April 24, 2024). In the context of handling incoming mail, "processing" could mean any number of acceptable acts—sorting the mail for delivery, making a record of the date and time of delivery and the name of the individual who hand-delivered the mail, inspecting the exterior packaging (if any) for evidence of tampering or contraband, copying or logging the titles of the books into the inmate's book list. Jones did not state anywhere in his amended complaint that his legal mail was opened outside of his presence by any of the individual defendants, that any of the named defendants read his legal mail, or that legal papers were otherwise inappropriately handled by one or more of the defendants before being delivered or rejected. Indeed, Jones did not even indicate whether the books and papers delivered by his attorney arrived in envelopes or packaging that required them to be opened by the WRJ staff—the books and papers could just as likely have been delivered without any wrapping. Jones did not allege that the papers and books were marked as "privileged," or "confidential," or as "legal mail," and one or more of the defendants ignored that designation. Jones's isolated statement that the trial transcripts and books delivered by his attorney were in the office for "processing" is simply insufficient to create a reasonable inference that one or more of the defendants opened or read Jones's legal mail outside of his presence. *See Ashcroft*, 556 U.S. at 678. While it is

11

*possible* that Jones's legal mail was mishandled while in the office for "processing," his amended complaint does not contain enough facts to rise to the level of *plausiblity*. *See id.*

The rest of Jones's amended complaint further supports a finding that he did not claim that *one or more of the defendants* mishandled his legal mail. Jones did not suggest that the "processing" was improper, or that it was the foundation of his First Amendment claims. In his amended complaint and during his deposition, Jones only mentioned the "processing" to provide a full account of the rejection of the law books—the real thorn in his side. Jones's focus was on the rejected law books—he discussed how he filed a grievance, and he disputed claims by Defendants Moore and Aldridge that his family and attorney were contacted to pick up the books. (ECF No. 11 at 5). Jones concluded this section of his complaint: "WRJ staff interfered, denying legal books from my attorney to assist in pursing my legal matter." (*Id.*). Similarly, the grievance which Jones attached to his complaint did not assert that prison staff improperly opened or viewed his legal mail. (*See* ECF No. 11 at 18). He merely asked staff to deliver the law books "to assist with [his] legal work." (*Id.*). Jones's sole contention was that the law books had been improperly rejected—not that his legal papers were inappropriately examined. Therefore, the undersigned **FINDS** that the amended complaint does not state a plausible claim that any of the defendants violated the constitution by opening and reviewing Jones's legal mail.[2]

---

[2] Even if Jones had stated during his deposition that WRJ staff had unconstitutionally read his legal mail or opened his legal mail outside his presence, that claim could not proceed unless Jones were permitted to amend his complaint to reflect those allegations. *See In re Mut. Funds Inv. Litig.*, 608 F. Supp. 2d 670, 671 (D. Md. 2009) (finding that defendants were not on notice of claims which were not asserted in the amended complaint and which only arose in the course of discovery). Jones was given time to request such an amendment, but he did not do so.

The Court also references Jones's reply memorandum as suggesting that he may have intended to assert a claim that the contents of his legal mail was improperly examined. The Court states, "[h]e cites three cases: *Kensu v. Haigh*, 87 F.3d 172 (6th Cir. 1996), *Davis v. Goord*, 320 F.3d 346 (2d Cir. 2003), and *Keenan v. Hall*, 83 F.3d 1083 (9th Cir. 1996). Each case acknowledges 'legal mail' from an attorney to an inmate should generally be opened in the inmate's presence." (ECF No. 98 at 9) (internal citations omitted). Jones did cite those three cases in his reply, (ECF No. 94 at 8), and consulting the full text of each case does reveal that legal mail from an attorney to an inmate must generally be opened in the inmate's presence. *Kensu*, 87 F.3d at 174; *Davis*, 320 F.3d at 351; *Keenan*, 83 F.3d at 1094. However, Jones did not cite to those three cases for that proposition. Instead, he cited the three cases to support his contention that the law books constituted "legal mail"—he quoted portions of each case stating that legal mail is entitled to greater protections than non-legal mail, that legal mail is defined by its contents and not its method of delivery, and that mail from a prisoner's attorney is always included in the definition of legal mail. (ECF No. 94 at 8).

Jones cited these cases, not to allege that his legal mail was improperly opened or inspected, but to argue that the rejected law books were themselves legal mail. Many of Jones's references to "legal mail" in his amended complaint and reply are ambiguous— "legal mail" could refer to the trial transcripts, the law books, or the draft appeal which he first mentioned in his reply. (*See* ECF Nos. 11, 94). But, in his objections to the PF&R, Jones clearly indicated that he believed the law books were "legal mail." (*See* ECF 97 at 4) ("WRJ Staff are using the 'publisher-only' rule to deny BOOKS AS LEGAL MAIL") (emphasis in original). In his reply, Jones cited to the three cases defining the properties of legal mail directly following his discussion of the rejected law books. Considering his

13

objections to the PF&R, his citations to the three cases in his Reply—*Kensu v. Haigh*, *Davis v. Goord*, and *Keenan v. Hall*—were meant to support a claim that the law books should not have been rejected because the books were legal mail.

The Court did not address in its remand order whether the law books actually did constitute "legal mail," but a brief review of the facts confirms that Jones's argument lacks merit. The three books Jones's attorney delivered were *The Appeal, Post-Conviction Relief: Secrets Exposed*, and *Ineffective Assistance of Counsel*. (ECF No. 11 at 18). Jones had tried purchasing these books previously, but they had been rejected, so he attempted to have his attorney deliver them to the prison instead. (ECF No. 91-1 at 6). There is no evidence that the books were packaged and marked as "legal mail" and, unless rejected, the books would have to have been logged on Jones's book list. In determining whether mail between an attorney and inmate constitutes "legal" mail, "the key issue is whether the attorney and inmate have a fundamental interest in maintaining the confidentiality of communications relating to a legal matter." *Am. C.L. Union Fund of Michigan v. Livingston Cnty.*, 796 F.3d 636, 644 (6th Cir. 2015). The law books do not qualify as confidential attorney-client communications: neither Jones nor his attorney authored the books, they contained no information specific to Jones or his criminal appeal, and they did not constitute legal advice from Jones's attorney. They were legal educational materials which Jones had previously tried and failed to receive as non-legal mail. With respect to the law books, Jones's attorney was merely acting as a courier, allegedly at the request of Jones's family. (*See* ECF No. 11 at 18). Under these circumstances, the law books cannot plausibly be considered "legal mail." *See, e.g., Smith v. Demory,* No. 9:19-1771-HMH-MHC, 2021 WL 222354, at *3 (D.S.C. Jan. 22, 2021) (holding that mail sent by an attorney was not "legal mail" because it contained only an instruction manual to a

14

card game.); *Vasquez v. Raemisch*, 480 F. Supp. 2d 1120, 1141 (W.D. Wis. 2007) ("Thus, a publicly available research book does not qualify as 'legal mail' regardless of the book's subject matter.").

To the extent that Jones's reply and objections to the PF&R contained new claims or allegations not raised in his amended complaint, those claims and allegations cannot properly be considered part of this lawsuit. As mentioned previously, Jones alleged for the first time in his reply that WRJ staff discarded a draft appeal. (ECF No. 94 at 7). The amended complaint contained no mention of a draft appeal, nor did Jones indicate that any legal papers were rejected or discarded. (*See* ECF No. 11 at 5). To the contrary, Jones asserted that he **received** the legal papers, just not the law books.

Jones also attached a new grievance to his reply, discussing an incident in which Jones alleged prison staff copied his legal mail on September 6, 2022. (ECF No. 94-14 at 4). This incident took place several days after Jones filed the amended complaint on September 2, 2022, but before the deadline expired for Jones's to file a second amended complaint. (ECF Nos. 11 at 8, 48). Jones never requested to further amend his complaint to include these new allegations—they were only raised in his reply to Defendants' motion for summary judgment.³ As the Court noted in its remand order, "[a] plaintiff may not

---

³ Notably, this incident was not discussed anywhere in the body of the reply brief; it was only mentioned in the grievance form which Jones attached to his reply along with more than 175 pages of other exhibits. Moreover, the grievance references Policy No. 328.00, which is not in the record and was not the policy that governed the opening of legal mail at the WRJ. The relevant policy, which was submitted as evidence, states that legal mail is to be opened in the presence of the inmate and searched for contraband. (ECF Nos. 94-2 at 3). It appears from the grievance that the legal mail was opened in Jones's presence by the correctional officer doing mail pass, and Jones was given a copy with the original placed in the mail tote. Some correctional facilities have portable copiers that accompany the officer at mail pass just for that purpose. Nonetheless, even if the mail had been opened outside of Jones's presence, "isolated incidents without any improper motive or resulting interference to the inmate's right to counsel or access to courts do not rise to the level of a constitutional violation. … Rather, an inmate must show that prison officials 'regularly and unjustifiably interfered with' his or her mail." *Adkins v. Chandler*, No. 2:19-CV-00210, 2020 WL 885968, at *3 (S.D.W. Va. Feb. 24, 2020) (citations omitted).

raise new allegations or claims at the summary judgment stage." (ECF No. 98 at 6). These new allegations cannot retroactively supplement Jones's amended complaint to state a new claim for interference with legal mail based on how and where the legal mail is opened and inspected. *See Cloaninger ex rel. Est. of Cloaninger v. McDevitt,* 555 F.3d 324, 336 (4th Cir. 2009) ("[A] plaintiff may not raise new claims after discovery has begun without amending his complaint."); *Equity in Athletics. Inc. v. Dep't of Educ.*, 504 F. Supp. 2d 88, 111 (W.D. Va. 2007) (explaining that "new legal theories must be added by way of amended pleadings, not by arguments asserted in legal briefs"). Regardless, Jones does not allege that any of the named defendants was responsible for opening and copying his legal mail on September 6, 2022.

Similarly, Jones is precluded from raising new causes of action in his objections to the PF&R because, at that point, Defendants are clearly prejudiced. Jones argued in his objections that he was not making new claims, but they are indeed new claims. While Jones is not required to make every argument or state every fact in his pleadings, he is obligated to include enough information for the adverse party and the court to discern the nature of his claims. He cannot simply allege that the WRJ mishandled his mail without any supporting facts. Nor can he expect the Court and adverse parties to intuit his claims from random and unexplained exhibits he attaches to a reply memorandum. At no point in his amended complaint did Jones allege that his rights were violated by one of the Defendants opening, copying, or reviewing his legal mail. (*See* ECF Nos. 11, 94). Moreover, no facts were contained in the amended complaint and its attachments from which the undersigned or Defendants could infer such a claim. Any claims or allegations against Defendants should have been included in the amended complaint or in a second amended complaint. Accordingly, the undersigned **FINDS** that Jones failed to timely

state a plausible claim that his legal mail was improperly opened or reviewed outside of his presence by one or more of the defendants, and his amended complaint should be dismissed.

### III. Proposed Findings and Recommendation

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding District Judge accept and adopt the findings proposed herein and **RECOMMENDS** Jones's Amended Complaint, (ECF No. 11), be **DISMISSED**, and this action be **REMOVED** from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

17

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff and counsel of record.

**FILED**: April 25, 2024

Cheryl A. Eifert
United States Magistrate Judge